**STATE ex LONG, Relator-Appellee, v. INDUSTRIAL COMMISSION, Respondent-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 4995.   Decided February 16, 1954.

Kenneth Agee, Columbus, R. Brooke Alloway, Columbus, for relator-appellee.

Hon. C. William O'Neill, Attorney General, James M. Videan, Assistant Attorney General, Columbus, for respondent-appellant.

**OPINION**

By THE COURT.

This is a law appeal from the judgment of the Common Pleas Court ordering a writ of mandamus to be issued requiring the Industrial Commission of Ohio, the respondent herein, to make an additional award for the violation of a specific safety requirement which is set forth in Bulletin 203, Section 15 (d) of the regulations of the Industrial Commission and known as "General Safety Standards for Workshops and Factories."

The record discloses that on April 4, 1949, the relator sustained a compensable injury; that claims for compensation and medical expenses were duly filed, allowed and paid as provided by law; that on May 16, 1950, an application for an additional award was filed for the alleged violation of a specific safety requirement, the same section as that now under consideration. Upon a hearing being had the Commission issued the following order:

"This claim coming on to be heard on claimant's application for additional award for Violation of Specific Requirement filed May 16, 1950, the Commission finds from proof of record that claimant's injury was not caused by employer's violation of any specific requirement and that claimant's said application should, therefore, be denied."

An application for a rehearing was filed and the previous order was affirmed.

The operating facts as they appear in the file of the respondent show that on April 4, 1949, relator was regularly employed by the Butler Co-Operative Company, which operated a combination elevator, mill and feed store. On the day in question he and a fellow employee had run a quantity of corn cobs through the hammer mill and then through the feed mixer. At the time of the accident the relator was engaged in cleaning the residue from the bottom of the vertical screw or worm, located in the bottom of the mixer, when the starting switch on the same was inadvertently pressed by the other employee. This started the mixer, including the vertical screw while the relator had his left hand inside of the metal casing within which the screw was housed. He had previously lifted a small sliding metal door on this casing and inserted his hand while the machine was stopped. When the mixer was inadvertently started his left hand was caught between the screw and the casing resulting in his injuries. This mixer, a drawing and description of which by the special investigator are in the file, is a rather large machine located on the first floor of the mill, with all moving parts completely encased in said metal. It stands about 10 feet high and is located entirely in one room of the mill, with the exception of the section of the vertical worm or screw which extends 24 inches below the floor and into the basement. The vertical worm or screw is totally enclosed by a metal casing until it moves into the hopper at the top of the mixer. There is a 4 by 4 inch hand hole located in the part of the casing below the floor level which is covered by a tight fitting, sliding metal door. There is a metal rod handle welded to it which extends vertically up through the floor with a hook on the upper end so that the operator could open and close it from his regular station on

the first floor without going to the basement. It was through this opening that the relator had his hand when the accident occurred.

The record discloses that there was an electrical switch in the room on the first floor by means of which the machine could be disengaged, but there was none in the basement, where relator was when the injury occurred; hence, the legal question arises as to whether or not the failure to have one in the basement was a violation of the aforesaid section of said Bulletin 203. This section provides that,

"Every room or department shall be provided with a means of disengaging the machinery in that room or department from the source of power."

It should be noted that the question presented is one of law; hence the order of the Commission is not final. **Slatmeyer v. Commission, 115 Oh St 654.** We think it is clear from the facts presented that a part of the machine causing the injury was located in the basement and if the provisions requiring a cutoff switch in each room are controlling, then there has been a failure of compliance with the reqirement. But the respondent urges that even if this theory is correct still there was one switch for the department which is in full compliance with the regulation. Again, we cannot agree with the respondent. Perhaps there would be some merit to this contention if the section of Bulletin 203 provided "Every room **and** department shall be provided with a means of disengaging the machinery in that room **and** department from the source of power." A department might well be located in several rooms and were the respondent's theory adopted only one disengaging switch would be required. Such a construction, it appears, would defeat the entire purpose of the safety requirement in case the employer chose to regard each machine as a separate department. We are of the opinion the regulation requires a means of disengaging the machinery from the source of power in each room, or when there is more than one department in a room, then each department in said room must be capable of being disengaged.

Counsel also urges that Bulletin 203 has no application whatever to the instant case for the reason that the machinery in question herein was excluded from the operation of Bulletin 203 by the "scope" clause of Bulletin 110 of the Industrial Commission of Ohio, entitled "Specific Safety Requirements covering the construction, maintenance and operation of elevators, dumb waiters, escalators, man-lifts and their hoistways. In support of this argument counsel cite the case of **Marble Cliff Quarries Co. v. Commission, 154 Oh St 459.** Said Bulletin No. 110 provides:

"The requirements of this code shall apply to the construction, inspection, maintenance and operation of elevators, dumb-waiters, escalators, man-lifts and their hoistways, except as stated in the following paragraph * * *."

We think that the type of elevators, etc., set forth in the "Scope" above quoted have no similarity to the machinery which was the cause of the injury to the relator and the rule of ejusdem generis excludes from its purview any machinery not of the same general character as that specifically enumerated. It is true the worm screw elevated the

218

feed from the basement to the hopper on the second floor, but the chief function of the machinery was that of a grinder, not of an elevator. An examination of the facts reported in the decision in the case of State, ex rel. Marble Cliff Quarries Co. v. Commission, supra, discloses that the conveyor involved therein was in fact a "bucket conveyor system" and was for the purpose of conveying the material from one point to another higher point, and therefore was not similar to the mixing machine involved in this action.

We find no error in the record and the judgment will be affirmed.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.